LoConto, PJ.
The question of law requiring review was submitted to this Appellate Division in the form of a G.L.C. 218, §23 report of a case stated. We are asked to decide whether defendant Pioneer Valley Transit Authority (“FVTA”) is a public employer pursuant to G.L.c. 258, §1 and, therefore, whether subject matter jurisdiction lies only in the Superior Court Department G.L.C. 258, §3. We find that the FVTA is a public employer and affirm the decision of the judge dismissing the complaint.
Plymouth Rock Assurance Corporation (“Plymouth Rock”), as subrogee of its insured, Michael F. Dolan (“Dolan”), filed a small claim action in the Springfield *70 Division of the District Court Department on June 2, 2001 against the PVTA and Shelly Sabin (“Sabin”). Plymouth Rock had paid Dolan for property damage to his vehicle resulting from an accident he had with a PVTA bus operated by Sabin. The suit claimed that Sabin’s negligent operation of the bus caused the damage to Dolan’s vehicle, and sought damages from both PVTA and Sabin.[3] A trial court magistrate denied the PVTA’s motion to dismiss the action for lack of subject matter jurisdiction and, after hearing, entered a finding in favor of Plymouth Rock. The PVTA appealed the magistrate’s decision to a trial judge and renewed its motion to dismiss the complaint. The judge allowed the motion and reported the jurisdictional issue to this Appellate Division.
Created by statute in 1973,[4] the PVTA was established, upon compliance with law, as a body politic and corporate and a political subdivision of the Commonwealth. It was created as a regional transportation authority for the benefit of the people of various cities and towns in Western Massachusetts. In order to fulfill its obligations, an authority so established has the power to hold property, and to sue, prosecute and defend in all actions, and is liable for its debts and obligations.
The Massachusetts Tort Claims Act (“Act”) was created by statute in 1978. Under the Act, any public employer shall be liable for property damage, personal injury, or death caused by the negligent or wrongful conduct of a public employee acting within the scope of her employment.[5] The Act defines a public employer as
the commonwealth and any county, city, town, educational collaborative, or district, including any public health district or joint district or regional health district or regional health board established pursuant to the provisions of section twenty-seven A or twenty-seven B of chapter one hundred and eleven, and any department, office, commission, committee, council, board, division, bureau, institution, agency or authority thereof including a local water and sewer commission including a municipal gas or electric plant, a municipal lighting plant or cooperative which operates a telecommunications system pursuant to section 47E of chapter 164, department, board and commission, which exercises direction and control over the public employee, but not a private contractor with any such public employer, the Massachusetts Bay Transportation Authority, the Massachusetts Port Authority, the Massachusetts Turnpike Authority, or any other independent body politic and corporate.
G.L.c. 258, §1. Plymouth Rock suggests that the PVTA is an “independent body politic and corporate,” and that by specifically excluding the Massachusetts Bay Transportation Authority (“MBTA”) from the definition of “public employer,” the Act intended to exclude transportation authorities generally. We disagree.
In Kargman v. Boston Water and Sewer Comm’n, 18 Mass. App Ct. 51 (1984), the plaintiff sued in negligence alleging that broken water pipes damaged his apartment. The defendant filed a motion for judgment on the pleadings, claiming that it was a “public employer” requiring presentment of the claim as a prerequisite to commencing suit against it in accordance with G.L.c. 258, §4. A superior court judge agreed and dismissed the action. In reversing the lower court’s decision, the *71 Appeals Court opined that the defendant, Boston Water & Sewer Commission, was an “independent body politic” and, therefore, not subject to the requirements of the Act.[6] The Court traced the history of the term “body corporate and politic” back to the Preamble of the Massachusetts Constitution, and thereafter to its use by the Legislature to create “a legal entity to perform specified tasks deemed to be essential public functions.” Kargman, supra at 55. In Kargman, the Appeals Court set forth factors to apply in determining if an organization is an “independent body politic and corporate,” and directed that those factors be compared to the characteristics of the entities specifically exempted by the statute. The factors to be considered are whether the authority is financially and politically independent from the Commonwealth and its political subdivisions.
Applying the factor of financial independence in this case, we note that both the FVTA and the MBTA have the authority to issue bonds and notes; enter into agreements with other parties; accept gifts, grants and loans; manage and operate facilities and equipment; and make, revise and repeal by-laws, rules and regulations. Both entities are liable for their debts and obligations. Additionally, they both have the power to hold property and to sue and be sued. However, there is less resemblance when the political independence factor is applied. The affairs of the regional transportation authorities are managed by an administrator, appointed by and serving at the pleasure of an advisory board. The advisory boards of the regional transportation authorities are comprised of the mayor of each city, and the chair of the board of selectmen, or a designee, from each of the member communities. G.L.c. 161B, §5. Voting rights are determined by a proportion of the fiscal assessments paid by the locality for transportation services. Id. Additionally, there are limitations on certain of the administrator’s powers. For example, no real estate can be sold unless notice is given to the advisory board; any concession or lease for a term greater than one year must be awarded to the highest bidder unless the authority determines that the public interest requires otherwise; all fee changes must be submitted to the advisory board; and changes in services require the approval of the authority. G.L.c. 161B, §8. By comparison, the MBTA structure also includes the establishment of an advisory board, created similarly to the advisory boards of the regional transportation authorities. However, the MBTA is managed by a board of nine directors, eight of whom are appointed by the Governor to two-year terms. G.L.c. 161A, §7. The Governor’s appointees are selected from lists provided by the mayor of Boston, the executive officers of the cities and towns, excluding Boston, within the jurisdiction of the authority, and from the metropolitan area planning council on behalf of the cities and towns served by the authority. Id. A board member may be removed by the Governor, but only for cause. Id.
The Supreme Judicial Court also considered the issue of classifying an organization as an independent or dependent body politic in Lafayette Place Assocs. v. Boston Redevelopment Auth., 427 Mass. 509 (1998). That case required the Court to determine if the Boston Redevelopment Authority (“BRA”) was a public employer. In a unanimous opinion of the Court, Justice Fried acknowledged the “thoroughly and closely reasoned memorandum” of the trial judge’s application of the Kargman factors in ruling that the BRA was a public employer. But the Supreme Judicial Court reasoned, ultimately, that
[a]ny analysis that relies heavily on the Kargman factors must cope with the embarrassment that just the factors that are discerned in Kargman as indicia of independence of the three named entities are present with at *72 least as much force in the case of Boston, other cities and towns, and the Commonwealth itself— all of which are designated... as public employers.
Lafayette, supra at 530. The Court resolved this imprecise analysis by suggesting that any doubts about the BRA’s status as an independent body politic
should be resolved against such a designation, because of the desirability of making the c. 258 regime as comprehensive as possible, thus avoiding reintroducing the ‘crazy quilt’ of immunities, (citation omitted) which the Act was meant to replace.
Id. at 532.
In the final analysis, the Legislature’s intention to exclude three organizations specifically from the ambit of G.L.C. 258 may be unrelated to their characteristics as either dependent or independent bodies politic. We are persuaded that inclusion is the appropriate result, supported by the somewhat limited political independence of the PVTA as compared with the political independence enjoyed by the MBTA. Therefore, we answer the reported questions as follow: To the question of whether the PVTA is a public employer pursuant to G.L.C. 258, we answer in the affirmative. To the question of whether the trial court erred in allowing the PVTA’s motion to dismiss, we answer that it did not.
Judgment of dismissal affirmed.

 Whether Sabin was employed by the PVTA, or UMASS Transit, is immaterial to a resolution of this appeal. If Sabin was a public employee acting within the scope of her official duties, she is immune from liability for any negligent act. G.L.c. 258, §2.

 See St. 1973, c. 1141, §1.

 Exceptions pertaining to an employee’s intentional act or exercise of a discretionary function are not relevant here.

 The Legislature later amended the definition of a “public employer” to include a “local water and sewer commission.” St. 1992, c. 343, §5.